UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Plaintiff,<br><br>       v.<br><br>PUBLIC BUILDINGS REFORM BOARD,<br><br>                    Defendant. | CASE NO. 2:21-cv-00566-TL<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS CONFERENCE |

This matter comes before the Court on the State of Washington's ("Plaintiff's" or "Washington's") motion for summary judgment (Dkt. No. 8) and motion requesting a status conference (Dkt. No. 25). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein and finds that oral argument is unnecessary. Washington seeks summary judgment against the Public Buildings Reform Board ("Defendant" or "PBRB" or "Agency") for failing to meet its obligations under the Freedom of Information Act ("FOIA"). Specifically, Washington claims that PBRB (1) failed to provide a required determination regarding its records request, (2) delayed production of responsive records, and (3) has improperly asserted certain FOIA exemptions to withhold or redact otherwise responsive

information. As discussed below, the Court GRANTS IN PART and DENIES IN PART Washington's motion for summary judgement. Consequently, the Court DENIES Washington's request for a status conference as moot.

## I. BACKGROUND

This is Washington's second round of FOIA litigation arising from requests for records related to the Federal National Archives in Seattle.

**A.  FOIA Litigation: Round 1**

In February 2020, after learning of a proposed plan to sell the Seattle National Archives building, Washington requested records about the federal government's plans from four different federal agencies involved in the planning, including Defendant. In August and September 2020, Washington filed similar FOIA lawsuits against each agency alleging the agencies failed to promptly respond. *See State of Washington v. Office of Management and Budget*, 2:20-cv-1231-RSL (W.D. Wash. 2020); *State of Washington v. U.S. National Archives and Records Administration*, 2:20-cv-1232-RSL (W.D. Wash. 2020); *State of Washington v. U.S. General Services Administration*, 2:20-cv-1233-RSL (W.D. Wash. 2020); *State of Washington v. Public Buildings Reform Board*, 2:20-cv-1364-RSL (W.D. Wash. 2020). In December 2020—4 months after filing the lawsuit and 10 months after its original FOIA requests—Washington was granted summary judgment in its case against the Public Buildings Reform Board. *See State of Washington v. Public Buildings Reform Board*, 2:20-cv-1364-RSL at Dkt. No. 18. There, the Court ordered the agency to produce all remaining responsive documents on an expedited timeline. *Id.* All four cases subsequently resolved through cooperation of the parties without the need for further judicial intervention by December 2021.

B.     **FOIA Litigation: Round 2**

This case arises from a new set of FOIA requests for additional records related to the National Archives building that Washington made on February 25, 2021. Dkt. No. 8 at 6. On March 10, PBRB acknowledged receipt of the request and provided a tracking number. Dkt. No. 14 at 3. Washington did not request expedited processing. *Id.* at 2. Due to PBRB's staffing limitations and the anticipated scope of the required search, the Agency determined that it would need to hire federal contractors to process Washington's FOIA request. *Id.* at 2-3. While that process was underway, this lawsuit was filed in April 2021.[1] Dkt. No. 1. Like the Round 1 cases, Washington alleges the Agency has failed to meet its FOIA obligations in responding to the new February 2021 request.

After the lawsuit was initiated, counsel for the Agency began communicating with counsel for Washington regarding the Agency's progress. Washington acknowledges that it has had regular communication with the Agency regarding its progress and that the Agency had identified the scope of potentially responsive documents that it was reviewing. Dkt. No. 8 at 7. The Parties communicated about the Agency's need to hire contractors, worked cooperatively to identify appropriate search parameters to make the process more efficient and started to negotiate a stipulated production schedule. Dkt. No. 14 at 4-5. Despite these communications, by August 2021 (six months after making the new FOIA requests and four months after filing the lawsuit), Washington had only received a single production representing a fraction of the anticipated documents, many of which were withheld or redacted. Dkt. No. 8 at 7.

---

[1] Plaintiff has also asserted similar claims against the other three agencies from the Round 1 litigation in separate lawsuits. *See State of Washington v. Office of Management and Budget*, No. 2:21-cv-00564-TL (filed Apr. 27, 2021); *State of Washington v. U.S. National Archives and Records Administration*, No. 2:21-cv-00565-TL (filed Apr. 27, 2021); *State of Washington v. U.S. General Services Administration*, No. 2:21-cv-00794-TL (filed Jun. 11, 2021).

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS CONFERENCE - 3

1  Washington moved for summary judgment, requesting injunctive relief in the form of an
2  expedited production schedule and preliminary determinations on the appropriateness of certain
3  exemptions invoked in the Agency's initial productions. Dkt. No. 8. The motion, originally noted
4  for September 10, 2021, was voluntarily re-noted for October 1 by Washington (see Dkt.
5  No. 11), and the briefing schedule was adjusted accordingly by stipulation of the parties. *See*
6  Dkt. Nos. 12, 13.

7  In late November 2021, the Parties further stipulated to continuing the previously adopted
8  dispositive motion briefing schedule and revisiting the need for additional dispositive motions
9  after Washington's then pending motion for summary judgment was resolved. Dkt. Nos. 21, 22.
10 On February 16, 2022, Washington filed an opposed motion requesting a status conference with
11 the Court. Dkt. Nos. 25, 28, 29.

## II.  SUMMARY JUDGMENT STANDARD

13 Most FOIA cases resolve on summary judgment. *Animal Legal Def. Fund v. U.S. Food &*
14 *Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc) (per curiam). Summary judgment is
15 appropriate where, viewing "the evidence in the light most favorable to the nonmoving party,"
16 the court determines that there is no genuine issue as to any material fact and that the moving
17 party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)). Material facts
18 are those which might affect the outcome of the suit under governing law. *Moujtahid v. United*
19 *States Citizenship & Immigr. Servs.*, 2020 WL 4000980, at *3 (W.D. Wash. July 15, 2020)
20 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To survive summary
21 judgment "the nonmoving party must make a 'sufficient showing on an essential element of her
22 case with respect to which she has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*,
23 477 U.S. 317, 323 (1986)).

### III. DISCUSSION

FOIA establishes a "judicially enforceable public right" of access to federal agency records. *Elec. Frontier Found. v. Off. of the Dir. of Nat. Intel.*, 639 F.3d 876, 882 (9th Cir. 2010), *abrogated on other grounds by Animal Legal Def. Fund*, 836 F.3d at 989. In doing so, it imposes certain requirements upon any federal agency presented with a valid records request, including a duty to: (1) determine within 20 days—or 30 days in unusual circumstances—whether to comply with the request (*see* 5 U.S.C. § 552(a)(6)(A), (B)); and (2) make all appropriately requested records promptly available to the requestor (5 U.S.C. § 552(a)(3)(A)). An agency may withhold or redact otherwise responsive records by invoking any of nine narrowly construed statutory exceptions. 5 U.S.C. § 552(b). However, "FOIA's strong presumption in favor of disclosure means that an agency that invokes one of the statutory exemptions to justify the withholding of any requested documents or portions of documents bears the burden of demonstrating that the exemption properly applies to the documents." *Elec. Frontier Found.*, 639 F.3d at 883 (internal quotations and citations omitted).

Plaintiff seeks summary judgment on its FOIA claims by arguing that Defendant has failed to meet its FOIA obligations in three ways: (1) it has failed to provide an initial determination; (2) it has failed to promptly produce responsive records; and (3) it has invoked exemptions to withhold and redact records without sufficient justification.

**A.   FOIA's Determination Requirement**

FOIA requires an agency to make its initial determination within 20 days of receiving a request or within 30 days under unusual circumstances. 5 § 552(a)(6)(A)(i), (a)(6)(B)(i); *see also Aguirre v. United States Nuclear Regul. Comm'n*, 11 F.4th 719, 725 (9th Cir. 2021); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n* (*CREW*), 711 F.3d 180, 182 (D.C. Cir. 2013). The agency's determination must include "the scope of the documents that the

agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *CREW*, 711 F.3d at 186; *accord Aguirre*, 11 F.4th at 726 n.1 (citing to *CREW* as "delineating the requirements for a proper response"). Defendant appears to concede that it missed its statutory deadline but argues that it eventually met its determination obligations by informing Plaintiff of the scope of potentially responsive documents, the scope of exemptions invoked in its initial productions, and its expectation that similar exemptions would be required for future productions. Dkt. No. 14 at 8-11. Plaintiff argues that the information Defendant has provided is not specific enough to communicate the scope of documents it will produce or withhold, sufficient to meet its FOIA obligations. Dkt. No. 19 at 2-3. Although undeniably untimely, the Court finds that Defendant has nonetheless met its obligation to provide a substantive determination.

     An agency's substantive determination obligations are met once the requestor has "actual notice" of the information required for a determination. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 410 F. Supp. 3d 216, 224 (D.D.C. 2019). The record here indicates that the Parties worked cooperatively, at least until Plaintiff decided to file this motion, to identify the universe of documents that would be reviewed for responsiveness and exemption based on negotiated search priorities and then to determine a mutually agreeable production schedule. Thus, Plaintiff was fully aware of the scope of records involved in its request. Further, having produced a subset of those records upon which exemption determinations were made, Defendant appears to have met its obligations as to the scope of potential exemptions contemplated in *CREW*. *See Cmty. Ass'n for Restoration of the Env't, Inc. v. U.S. E.P.A.*, 36 F. Supp. 3d 1039, 1049 (E.D. Wash. 2014) (finding that it was sufficient for the agency to inform the requestor that it would apply similar exemptions to future productions as were applied to a subset of documents previously produced).

The "penalty" for an agency missing its determination deadline "is that the agency cannot rely on [FOIA's] administrative exhaustion requirement to keep cases from getting into court." *CREW*, 711 F.3d at 189. PBRB does not challenge Washington's lawsuit on administrative exhaustion grounds, but instead argues that Washington cannot receive its requested relief on summary judgment due to the Agency's untimely determination. Dkt. No. 14 at 10-11. On the contrary, Washington argues that injunctive relief is appropriate where there is a demonstrated pattern or practice of violations by the Agency and where the delay in providing a determination is egregious. Dkt. No. 8 at 12; Dkt. No. 19 at 3.

1. <u>Washington Fails to Raise an Actionable Pattern or Practice Claim</u>

"[P]attern-or-practice claims are viable under FOIA" when adequately alleged. *Aguirre*, 11 F.4th at 728; s*ee also Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1107 (9th Cir. 2016) (noting that "FOIA's prescribed relief is injunctive or declaratory, [so] generally a plaintiff alleging a pattern or practice claim under FOIA must also meet th[e] future harm requirement" to establish standing). Washington argues that it has adequately alleged a pattern or practice claim that warrants injunctive relief. Dkt. No. 8 at 12-14. The Agency responds that no such claim was raised in Washington's Complaint, nor were sufficient facts alleged in the Complaint to establish standing for a pattern or practice claim. Dkt. No. 14 at 10 n.4. Washington counters by arguing that "it did include allegations regarding PBRB's prior FOIA violations related to the same subject matter" in its Complaint. Dkt. No. 19 at 3. The only allegations regarding its prior FOIA requests included in Washington's Complaint are an oblique reference to this being the second round of FOIA requests related to the Seattle National Archives (Dkt. No. 1 at ¶ 1) and a footnote referencing the then still pending litigation stemming from the first round of requests. *Id.* at 1 n.1. Even if these references were sufficient to imply a pattern or practice claim was being raised, as Washington appears to argue, they are not

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS CONFERENCE - 7

sufficient to meet the future harm requirement needed to establish standing for such a claim. Nor may Washington amend its Complaint through briefing on summary judgment.

### 2. PBRB's Delay Was Not Egregious

Washington argues that the amount of time between its initial request and the Agency's initial production demonstrates an egregious delay. Dkt. No. 8 at 12. Washington relies primarily on *P.W. Arms, Inc. v. United States*, which found that a 20-month delay before the agency in question even initiated a search was sufficiently egregious to warrant injunctive relief. *P.W. Arms, Inc. v. United States*, 2017 WL 319250, at *2 (W.D. Wash. Jan. 23, 2017). Similarly, Washington points to *Oregon Natural Desert Association v. Gutierrez*, where the requestor was left in the dark for eight months without a response from the agency. *Oregon Nat. Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006). Even though length of delay was a consideration in these cases, it was not the sole determinative factor in deciding that the agencies' actions constituted egregious delay. Unlike in *P.W. Arms* or *Gutierrez*, here the Agency: (1) actively communicated with Washington about its efforts to hire contractors and identify the universe of potentially responsive documents; (2) worked with Washington to ensure it was prioritizing the most relevant searches; and (3) cooperated with Washington to negotiate a review and production schedule. Dkt. No. 8 at 7; Dkt. No. 14 at 3-6. At no point was Washington left completely in the dark as to whether the Agency would respond to its request. To the contrary, Washington was kept informed of the Agency's progress along the way.

While there is no doubt that the Agency failed to meet the statutory deadline for providing a complete determination, its actions do not rise to the level of egregious delay as to warrant injunctive relief. The appropriate "penalty" for the Agency's delay is to relieve Washington of FOIA's administrative exhaustion requirement, but that is not at issue here. This approach preserves the "[statutory] scheme [that] provides an incentive for agencies to move

quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement." *CREW*, 711 F.3d at 189.

Plaintiff is not entitled to its requested relief for Defendant's untimely determination as a matter of law. The Court therefore DENIES summary judgement on these grounds.

B.  **FOIA's Prompt Production Requirement**

Agencies are expected to make requested documents "promptly available" which typically means "within days or a few weeks . . . not months or years." *CREW*, 711 F.3d at 188; *see also Kinnucan v. Nat'l Sec. Agency*, 2021 WL 6125809, at *9 (W.D. Wash. Dec. 28, 2021) (same) (quoting *CREW*, 711 F.3d at 188). Here, more than six months elapsed before the Agency was prepared to even begin producing documents and, even then, at a relatively constrained pace. Dkt. No. 14 at 5. The Agency proposed rolling productions that would not be completed until the end of November 2021—or nine months after receipt of the request. *Id.* at 5-6. That this kind of months long delay could result in summary judgement should be no surprise to the Agency. *See Public Buildings Reform Board*, 2:20-cv-01364-RSL at Dkt. No. 18 (granting summary judgment to the Plaintiff for the Agency's failure to promptly produce documents in a case involving similar parties, represented by the same counsel, regarding similar requests, under similar circumstances). The Agency argues that its proposed production schedule meets its prompt production obligation and that unusual circumstances warrants excusing the initial six-month production delay. Dkt. No. 14 at 11-13.

The Parties appear to agree that such a delay is excusable if the Agency can show that the delay was due to exceptional circumstances and that the Agency was nonetheless acting with due diligence to complete the request. *See* 5 U.S.C. § 552(a)(6)(C). PBRB relies on the fact that it has no dedicated FOIA staff and decided to hire outside contractors to complete Washington's request. Dkt. No. 14 at 14. Generally, "[p]redictable staffing limitations do not [] constitute

1  'exceptional circumstances.'" *ACLU of Washington v. U.S. Dep't of Just.*, 2010 WL 11692313,

2  at *2 (W.D. Wash. Jan. 19, 2010). PBRB was well aware of its FOIA obligations (see *Public*

3  *Buildings Reform Board*, 2:20-cv-01364-RSL at Dkt. No. 18) and provides no explanation for

4  why it could not have predicted the need for sufficient staffing to respond to a request such as

5  Washington's. Regardless of the "practical difficulties" FOIA presents to federal agencies,

6  "Congress wrote a tough statute on agency delay in FOIA compliance." *Fiduccia v. U.S. Dep't of*

7  *Just.*, 185 F.3d 1035, 1041 (9th Cir. 1999). PBRB's predictable lack of adequate staffing and

8  decision to hire contractors does not amount to "exceptional circumstances" considering FOIA's

9  clear mandates. For this reason, the Court need not decide whether PBRB was acting with due

10 diligence, as its delay cannot be excused without a showing of exceptional circumstances.

11     The Agency's equitable arguments are now essentially moot. PBRB spends much of its

12 opposition arguing that regardless of whether the Court finds that it has violated its FOIA

13 obligations, the Court should exercise its equitable discretion to deny Washington's request for

14 injunctive relief in the form of expedited production. Dkt. No. 14 at 13-17. Essentially, PBRB

15 argues that the balance of equities tilts in its favor because of the hardships an expedited

16 production schedule would cause to its process, likely increasing the risk of inadvertent

17 disclosure of exempt records. *Id.* at 15-16. The Court notes that at the time PBRB prepared its

18 opposition briefing, the Agency was projecting being able to complete all productions by

19 November 2021. *Id.* at 5-6. Thus, whatever the balance of equities may have been at the time,

20 PBRB has now had more than three months beyond its own proposed deadline to complete the

21 records request. Any argument against Washington's requested injunctive relief based on the

22 balance of equities is no longer availing.

23     For these reasons, the Court GRANTS summary judgment for Washington due to PBRB's

24 failure to promptly produce requested records. As such, the Court ORDERS PBRB to produce all

remaining non-exempt public records responsive to the state's request **within 21 days** of the date of this Order.

C.  **The Agency's Redactions of Documents**

An agency may withhold or redact records by invoking any of nine narrowly construed statutory exceptions, 5 U.S.C. § 552(b), but the agency "bears the burden of demonstrating that the exemption properly applies to the documents." *Elec. Frontier Found.*, 639 F.3d at 883 (internal quotations and citations omitted). Washington challenges some of the exemptions that the Agency invoked in the limited production it had received at the time of filing its motion for summary judgment, arguing that the Agency's conclusory justifications are insufficient. Specifically, Washington argues that the Agency failed to produce a *Vaughn* index, or the equivalent, with its initial productions. Dkt. No. 8 at 18. PBRB responds by noting that a *Vaughn* index is typically the product of litigation and is not a requirement under the statute. Dkt. No. 14 at 17-18. While the Court generally agrees with the Agency on this point, the Court is nonetheless concerned about Washington's allegations regarding the lack of information provided by the Agency to support its invocation of exemptions. That said, the Court recognizes that the Agency had produced only a fraction of the documents involved in this litigation at the time Washington filed its motion and does not intend to make exemption determinations on a piecemeal basis, as that would be extremely inefficient.

Therefore, the Court DENIES as premature Washington's challenges to the Agency's exemption claims in its limited production set. However, the Court notes that "PBRB does not object to providing the State with sufficient time to respond to a future *Vaughn* index." Dkt. No. 14 at 18-19 n.9. In line with the Court's order regarding expedited completion of all remaining productions and PBRB's suggestion, the Court ORDERS PBRB to provide Washington with a complete and comprehensive *Vaughn* index **within ten (10) days** of completing its

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS CONFERENCE - 11

production (or **within ten (10) days** of the date of this order, if the production has already been completed). The Parties are further ORDERED to meet and confer regarding the exemptions and to prepare a joint status report regarding the scope of any remaining exemption issues and a proposed briefing schedule regarding unresolved exemption challenges by **no later than April 25, 2022**. The Court anticipates the Parties will be able to narrow the scope of remaining exemption challenges requiring Court intervention through this process.

**D.     Plaintiff's Request for a Status Conference**

The Court DENIES the request for a status conference as moot per this Order. The Parties may request a status conference if warranted on alternate grounds.

### IV.     ORDER

Therefore, the Court GRANTS IN PART and DENIES IN PART Washington's motion for summary judgement (Dkt. No. 8) and DENIES Washington's request for a status conference (Dkt. No. 25). The Court further ORDERS that

1. PBRB will produce to Washington all remaining non-exempt responsive records **within twenty-one (21) days** of the date of this Order;

2. PBRB will produce to Washington a complete and comprehensive *Vaughn* index **within ten (10) days** of the completion of all remaining productions (or **within ten (10) days** of the date of this Order if all productions have already been completed);

3. The Parties shall meet and confer to narrow the scope of any remaining exemption challenges and shall prepare a joint status report and proposed dispositive motion briefing schedule to be filed **no later than April 25, 2022**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 18th day of March 2022.

*[signature]*

Tana Lin
United States District Judge

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR STATUS CONFERENCE - 13